UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MAX PEIKKOLA, | 4:15-CV-04148-KES |
| Plaintiff, | |
| vs. | |
| MARTIN JACKLEY, Attorney General of South Dakota, individual and official capacities; BRYAN GORTMAKER, Special Assistant Attorney General, individual and official capacities; GRETCHEN SLATE, Special Assistant Attorney General, individual and official capacities; DENNIS KAEMINGK, Secretary of the South Dakota Department of Corrections, individual and official capacities; J.C. SMITH, Regional Supervisor, South Dakota Parole Services, individual and official capacities; SAM BADURE, Case Manager for the DOC at the South Dakota State Penitentiary, individual and official capacities; ROBERT DOOLEY, Director of Prison Operations for the DOC, individual and official capacities; HUNTER SUMMERS, Special Security Lieutenant, South Dakota State Penitentiary, individual and official capacities; JOSH KLIMEK, Unit Manager, Mike Durfee State Prison, individual and official capacities; TAMMY DEJONG, Unit Coordinator, Mike Durfee State Prison, individual | ORDER DENYING MOTION FOR RECONSIDERATION AND DISMISSING AMENDED COMPLAINT IN PART AND DIRECTING SERVICE OF AMENDED COMPLAINT |

| | |
|---|---|
| and official capacities;<br>TRAVIS TJEERDSMA, Case Manager,<br>Mike Durfee State Prison, individual<br>and official capacities;<br>KELLY TJEERDSMA, Corporal, Mike<br>Durfee State Prison, individual and<br>official capacities;<br>DUSTIN TJEERDSMA, Correctional<br>Officer, Mike Durfee State Prison,<br>individual and official capacities;<br>LEE KAUFENBERG, Special Security<br>Captain, Mike Durfee State Prison,<br>individual and official capacities;<br>LYLE STOCK, Sergeant, Mike Durfee<br>State Prison, individual and official<br>capacities;<br>TAMMY DOYLE, Unit Manager at the<br>Mike Durfee State Prison; and<br>STEVE REYNOLDS, previous supervisor<br>of the automotive program, Mike Durfee<br>State Prison, individual and official<br>capacities,<br><br>    Defendants. | |

## INTRODUCTION

Plaintiff, Max Peikkola, filed this lawsuit pursuant to 42 U.S.C. § 1983, naming Martin Jackley, Gretchen Slate, Dennis Kaemingk, J.C. Smith, Sam Badure, Robert Dooley, Hunter Summers, Josh Klimek, Tammy DeJong, Travis Tjeerdsma, Kelly Tjeerdsma, Dustin Tjeerdsma, Lee Kaufenberg, Lyle Stock, Tammy Doyle, and Steve Reynolds as defendants. Peikkola is an inmate at Mike Durfee State Prison (MDSP) in Springfield, South Dakota. The court "screened" Piekkola's original complaint pursuant to 28 U.S.C. § 1915A. Docket 9. Piekkola now moves the court to reconsider this order, to grant him leave to amend his complaint, and grant him a preliminary injunction. Docket 11;

2

Docket12; Docket 13. For the reasons stated below, the court grants Piekkola's motion to amend, screens his amended complaint, and dismisses it in part for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1). The court also denies Piekkola's motion to reconsider.

## FACTUAL BACKGROUND

According to the amended complaint, in 2011, Peikkola was an inmate at MDSP. Docket 12-1 at ¶ 23. While incarcerated, Peikkola went through chemical dependency treatment with counselor Karri Reynolds. *Id.* In October 2011, Peikkola was paroled to the Community Transition Program and began a relationship with Karri. *Id.* at ¶¶ 24, 26. Karri quit working for the South Dakota Department of Social Services (DSS) before this relationship began. *Id.* at ¶ 27. Karri was married, however, to Steve Reynolds, an MDSP employee and a defendant in this action, but they were in the process of obtaining a divorce. *Id.* at ¶ 36.

The remaining background arises from three different arrests and their aftermath, one each in 2011, 2012, and 2015. In October or November 2011, Peikkola was arrested under the order of his parole agent, defendant Badure. *Id.* at ¶ 28. Badure was investigating Karri at the time of the arrest for a crime she allegedly committed while employed at DSS. *Id.* Peikkola was not under investigation and alleges that there was no cause to believe he had committed a crime and no reasonable suspicion that he had violated his parole. *Id.* The Department of Corrections found no basis for charging Karri after she passed a

3

polygraph. *Id.* at ¶ 29. After ten days, defendants released Piekkola without charging him with a crime or a parole violation. *Id.* at ¶¶ 29-30.

While Peikkola was incarcerated on the parole detainer, defendant Summers seized his phone, searched the hard drive, and responded to texts as if he was Peikkola. *Id.* at ¶ 31. Summers did not have a warrant for this search. *Id.* During this time, 2011-12, defendants Kaufenberg, Travis Tjeerdsma, Kelly Tjeerdsma, Dustin Tjeerdsma, and Reynolds sent harassing and threatening messages to both Karri and Peikkola. *Id.* at ¶ 32.

In April 2012, Peikkola was arrested for driving under the influence, and he was incarcerated in the South Dakota State Penitentiary (SDSP). *Id.* at ¶ 33. After Peikkola's arrest, Reynolds told Karri that he had offered to pay prisoners to attack Peikkola. *Id.* at ¶ 34. Peikkola told Associate Warden Jennifer Wagner about this threat. *Id.* at ¶ 35. Wagner placed an administrative override on Peikkola that kept him from being transferred to MDSP. *Id.* Instead, Peikkola was sent to a minimum custody facility in Sioux Falls, South Dakota. *Id.*

During this time, Reynolds and Karri were going through a divorce. *Id.* at ¶ 36. Peikkola spoke to Karri every day on the telephone. *Id.* These calls were recorded, and Kaufenberg accessed them and allowed Reynolds access as well. *Id.* Kaufenberg also allowed Reynolds access to Peikkola's institutional file. *Id.*

On October 31, 2013, Peikkola was paroled. *Id.* at ¶ 37. Piekkola alleges that the parole board was aware of his relationship with Karri and approved a plan that included their cohabitation. *Id.* After Peikkola's release, Reynolds continued to send harassing and threatening messages to Peikkola and Karri.

4

*Id.* at ¶ 38. In 2014, while working at MDSP, Reynolds made numerous negative remarks about Peikkola, including allegations about what Peikkola had done to Karri, Reynolds, and their families. *Id.* at ¶ 39. Peikkola claims Reynolds lied. *Id.* Reynolds also continued to offer rewards to inmates to attack Peikkola. *Id.* at ¶ 40. Defendants Dooley, Kaufenberg, Travis Tjeerdsma, Kelly Tjeerdsma, and Dustin Tjeerdsma knew about these threats. *Id.* In January 2015, Reynolds resigned from MDSP. *Id.* at ¶ 41.

In June 2015, Peikkola was arrested for "absconding from parole supervision" and was returned to SDSP. *Id.* at ¶ 42. Peikkola met with an admissions case manager, who was aware of Peikkola's situation and thought he should not be sent to MDSP. *Id.* at ¶ 43. The case manager applied for another administrative override, but it was denied. *Id.* Worried for Piekkola's safety, Karri called Warden Darin Young and explained the threats and danger Peikkola was in. *Id.* at ¶ 44. Warden Young said he was aware of the situation, but assured Karri that Peikkola would be safe from retaliation because Reynolds had resigned. *Id.*

On June 15, 2015, Piekkola was transferred to MDSP. *Id.* at ¶ 45. During his orientation, a prison staff member used Piekkola as an example of how not to do time at MDSP. *Id.* On July 8, 2015, Piekkola spoke to Dooley and explained his concerns. *Id.* at ¶ 46. Dooley said he was aware of the situation and told Piekkola to speak to defendant Klimek or use the administrative grievance system to seek a remedy. *Id.* Piekkola attempted to utilize the administrative grievance system. *Id.* at ¶ 47. He outlined his issues in an

informal request but was placed in administrative detention by DeJong and Travis Tjeerdsma for making the request. *Id.* He was released after one week without receiving a disciplinary report or a reason for his detention. *Id.* DeJong and Tjeerdsma harassed Piekkola while he was in detention, both commenting on his relationship with Karri. *Id.* at ¶ 48.

A few days after his release, Piekkola was issued a major rule infraction for unauthorized contact with a former employee. *Id.* at ¶ 49. Piekkola alleges that this must have referred to Karri and was issued by DeJong. *Id.* Piekkola alleges that Karri was never a DOC employee because she worked for DSS. *Id.* at ¶ 50. He also claims that the DOC does not have a rule "prohibiting contact between inmates and former DOC employees and/or contract employees unless the employee was fired for inappropriate contact with inmates or unless the employee resigned to avoid being fired for inappropriate contact with inmates." *Id.* at ¶ 51. He claims that because Karri resigned, this rule is inapplicable. *Id.* Piekkola and Karri were in contact with each other previously without objection by DOC employees or the parole board. *Id.* at ¶ 52.

Klimek conducted a Unit Disclpinary Committee (UDC) hearing about the phone calls between Piekkola and Karri. *Id.* at ¶ 53. Klimek offered Piekkola a deal with less punishment, but Piekkola refused and requested to be heard by a Disciplinary Hearing Officer (DHO). *Id.* During this hearing, defendant Stock found Piekkola guilty without hearing evidence that Piekkola contacted Karri or that he was not allowed to contact her. *Id.* at ¶ 56. Piekkola alleges that Stock was not an impartial decision maker because Stock previously made sexual

advances to Karri. *Id.* at ¶¶ 54, 55. Piekkola was fined $50 and lost his phone privileges for sixty days. *Id.* at ¶ 56. Immediately after this hearing, DeJong deactivated Piekkola's account. *Id.* at ¶ 57. He was warned that further contact with Karri in any form would result in serious consequences. *Id.* at ¶ 58.

In August 2015, Piekkola was again placed in administrative detention. *Id.* at ¶ 59. In his disciplinary report, DeJong said Piekkola used the phone, even though that was impossible because his account had been deactivated. *Id.* Klimek conducted a UDC hearing. *Id.* at ¶ 60. This time, Piekkola accepted a deal because he had been punished so severely by an allegedly biased arbiter in the previous DHO hearing. *Id.* at ¶ 60.

Piekkola was transferred to the Yankton Trusty Unit on December 4, 2015. The following day, he was transferred back to MDSP and placed in administrative detention. *Id.* ¶¶ 62-63. On his return, Dejong charged Piekkola with a major rule infraction that alleges that Piekkola had called Karri and lied on his phone verification by putting a false name with Reynolds' number. *Id.* at ¶ 64. Again, no evidence was offered. *Id.* Doyle conducted a UDC hearing. *Id.* at ¶ 65. Doyle offered a deal including loss of phone and care package privileges and time in administrative segregation, which Piekkola accepted. *Id.* at ¶¶ 65, 66.

On September 21, 2015, Piekkola filed his original complaint that raised seven claims and sought damages and equitable remedies. Docket 1. The court screened Piekkola's complaint and dismissed his illegal incarceration, due process, and denial of access to the courts claims. The court also dismissed

defendants Dooley, Kaemingk, Jackley, Gortmaker, Slate, Smith, and Badure. Docket 9. The court directed service of the remainder of the complaint on the remaining defendants. *Id.* The clerks' office sent Piekkola summonses in order to serve defendants, but he did not fill them out as instructed. Docket 10. Instead, he filed a motion to reconsider. Docket 11. Before the court responded to that motion, he moved to amend his complaint, Docket 12, and for a preliminary injunction. Docket 13.

## LEGAL STANDARD

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.,* 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Bell Atlantic* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the

8

complaint are true." *Id.* at 1965; *see also Abdullah v. Minnesota,* 261 F. App'x 926, 927 (8th Cir. 2008) (citing *Bell Atlantic* noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory).

## DISCUSSION

### I.    Motion to Amend

As an initial matter, Piekkola moves to amend his complaint. Docket 12. "A party may amend its pleading once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). Piekkola's complaint has not been served. Therefore, Piekkola is entitled to amend his complaint without leave of the court. His amended complaint, however, must be screened under § 1915A.

### II.    Screening Piekkola's Amended Complaint

Piekkola claims he was illegally incarcerated, he was subjected to an illegal search and seizure, his right to privacy was violated, his right to association was violated, he was deprived of property without due process, and he was defamed. Docket 12-1. Piekkola also claims defendants retaliated against him for exercising these rights. *Id.*

Piekkola's amended complaint does not seek a specific amount of damages. Instead, it requests "an amount to be determined by a jury." *Id.* at ¶ 217. Piekkola also requests a declaration that his rights were violated and his character was defamed. *Id.* at ¶¶ 213, 214. Finally, he requests injunctive relief to stop defendants from interfering with the exercise of his constitutional rights and from retaliating against him for exercising his rights. *Id.* at ¶¶ 215, 216.

9

### A.    Supervisory Liability

Many of Piekkola's claims present supervisory liability issues. He names Jackley, Gortmaker, Smith, Kaemingk, Dooley, Klimek, and Doyle as defendants in their supervisory capacity. Docket 12-1 at ¶¶ 75, 78, 82, 91, 93, 107, 109, 129, 131, 133, 141, 151, 153, 155, 165, 168, 172, 174, 178, 182, 196, 201, 203. Piekkola alleges these defendants are liable based on essentially the same language for each defendant in each claim. He claims each defendant is "personally liable under failure to train, policies/practices, and deliberate indifference theories of liability[,]" and that they "failed to train [their subordinates] that they [cannot violate his constitutional rights]." In many of the paragraphs, Piekkola also claims that defendants "allowed this practice to continue after the incident giving rise to this claim."

"[V]icarious liability is inapplicable to § 1983 suits[.]" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). A supervisor's liability must be based on his or her own "deliberate indifference or tacit authorization." *Grayson v. Ross*, 454 F.3d 802, 811 (8th Cir. 2006) (quoting *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994)). Defendants cannot be held liable merely because of their roles as supervisors.

Piekkola claims the defendants are liable based on their failure to train their subordinates.

In limited circumstances, a local government may be liable for its decision not to train certain employees about their legal duty to

10

> avoid violating citizens' rights. . . . A pattern of similar
> constitutional violations by untrained employees is ordinarily
> necessary to show deliberate indifference. It may be, however, that
> evidence of a single violation of federal rights, accompanied by a
> showing that a municipality has failed to train its employees to
> handle recurring situations presenting an obvious potential for
> such a violation, could trigger municipal liability.

*Folkerts v. City of Waverly, Iowa*, 707 F.3d 975, 982 (8th Cir. 2013) (citations and quotations omitted). For a "failure to train" claim to survive a motion to dismiss, a plaintiff must show (1) the policymaker's training practices were inadequate, (2) the policymaker was deliberately indifferent to the rights of the plaintiff, and (3) the training deficiencies caused a constitutional deprivation. *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

Piekkola's claim does not allege facts to support his allegation that the training was inadequate, that defendants acted indifferently, or that training caused violations of his constitutional rights. His bald assertion that training was inadequate is not sufficient. Courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 at 555.

Piekkola's claims against defendants in their supervisory capacity are "merely conclusory" and therefore insufficient to state a claim. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482

(8th Cir. 2007). Defendants Kaemingk, Dooley, Gortmaker, and Smith are dismissed without prejudice from all claims.

Jackley is also dismissed without prejudice. The only fact Piekkola alleges in support of Jackley's liability is that another parolee was told he was arrested in order to "get him out of the way" during an investigation. Docket 12-1 at ¶ 75. This does not concern Piekkola; he does not have standing to vindicate the rights of others. Therefore, it is irrelevant to his complaint.

Piekkola claims that Klimek and Doyle are liable both as supervisors and because they were "active participant[s]" in the constitutional violations. *Id.* at ¶¶ 133, 141, 155, 182, 196. Because Piekkola states a claim that Klimek and Doyle are liable as active participants, the claims against Klimek and Doyle are not dismissed.

### B.    Statute of Limitations

Piekkola claims his 2011 arrest was illegal. He makes this claim against Slate and Badure. Docket 12-1 at ¶ 67. He claims that when he was arrested he was not under investigation, there was no probable cause to arrest him, and there was no reasonable suspicion that he committed a crime in violation of his parole. *Id.* at ¶ 69. He claims DCI was investigating Karri, and this investigation was made easier by arresting him. *Id.* at ¶ 71. He also claims he was subject to an illegal search and seizure while in custody. *Id.* at ¶ 88. He brings the search and seizure claim against Summers. *Id.* at ¶ 86.

Piekkola's claims are barred by the statute of limitations. "The statute of limitations for claims brought under 42 U.S.C. § 1983 is generally the

applicable state law period for personal injury torts." *Strandlund v. Hawley*, 532 F.3d 741, 746 (8th Cir. 2008) (citing *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 124 n. 5 (2005)). Because 42 U.S.C. § 1983 does not contain a specific statute of limitations, the United States Supreme Court has instructed courts to apply the analogous state statute of limitations. B*ell v. Fowler*, 99 F.3d 262, 265–66 (8th Cir. 1996) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–68 (1985)). Under South Dakota law, "civil rights actions must be brought within three years after the alleged constitutional deprivation occurred or the action will be barred." *Id.* at 266; SDCL 15-2-15.2.

Piekkola's claims for illegal incarceration, search, and seizure are outside of this three year period. He filed his complaint on September 21, 2015. Docket 1. Thus, his limitations period stretches back to September 21, 2012. He claims he was illegally incarcerated and his phone was seized and searched in November of 2011. Docker 12-1 at ¶ 28. Therefore, his claims are barred by the three-year statute of limitations. This claim is dismissed.

### C.    Right to Privacy

Piekkola claims defendants Kaufenberg, Travis Tjeerdsma, Kelly Tjeerdsma, Dustin Tjeerdsma, and Reynolds violated his right to privacy by accessing and disclosing his personal information, which included "alcohol/drug treatment records, medical information, and mental health records." Docket 1 at ¶¶ 89-90. He claims, "[D]efendants used the information to make uncouth statements regarding Piekkola to Karri Reynolds and others." *Id.* at ¶ 91.

13

The Eighth Circuit Court of Appeals has recognized generally that the "Constitution protects individuals against invasion of their privacy by the government." *McCaslin v. Campbell*, No. 95–4041, 1997 WL 148824, at *2 (8th Cir. April 2, 1997). "Th[e] protection against public dissemination of information is limited and extends only to highly personal matters representing 'the most intimate aspects of human affairs.' " *Id.* (quoting *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996)). "[T]o violate the constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation ..., or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." *Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011) (quoting *Cooksey v. Boyer*, 289 F.3d 513, 516 (8th Cir. 2002)).

Prisoners' privacy rights, however, are diminished due to their status. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions"); *Hill v. McKinley*, 311 F.3d 899, 904 (8th Cir. 2002) (agreeing with the general statement of law that "prison officials must balance an inmate's right to privacy with the security needs of the institution"). The Eighth Circuit Court of Appeals has not decided whether prison records are the type of personal information protected under *McCaslin* and *Van Zee*.

The Eighth Circuit has, however, ruled on similar issues. The court held that in 1991, there was "no clearly established constitutional right to non-

14

disclosure of HIV status." *Tokar v. Armontrout*, 97 F.3d 1078, 1084 (8th Cir. 1996). But the *Tokar* holding was limited. The court stated: "[W]e hold that the district court did not err in granting appellees' motion for summary judgment. We do so simply because Tokar either failed to allege constitutional violations or set forth evidence sufficient to create triable issues of fact. On another record, the result could have been different." *Id.* at 1085.

In *Beers v. Stockton*, No.00-1119, 2000 WL 1839535 (8th Cir. 2000), the court affirmed the denial of a prisoner's privacy claim when a prison nurse released his medical records to nonmedical prison staff of a prison where he was being transferred. The court specifically noted that the release of Beers' records to nonmedical staff "was related to penological concerns." *Id.* at *1.

Of circuits that have ruled on this issue, including the Third, Second, and Sixth Circuits, the majority have found that prisoners retain a limited right to privacy. *See Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) (holding that "the gratuitous disclosure of an inmate's confidential medical information as humor or gossip . . . is *not* reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy"); *Doe v. Delie*, 257 F.3d 309, 317 (3d Cir. 2001) (holding that a prisoner's right to privacy in his HIV-positive status is "not fundamentally inconsistent with incarceration," and "the constitutional right to privacy in one's medical information exists in prison"); *Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010) (holding "inmates have a Fourteenth Amendment privacy interest in

15

guarding against disclosure of sensitive medical information from other inmates subject to legitimate penological interests").

In an older case, the Seventh Circuit held that prisoners do not have a constitutional right to the confidentiality of their medical records under the general right of privacy. *Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995). The Eleventh Circuit has noted but not ruled on the issue. *See Kahlout v. Jefferson Cty. Jail*, No. 2:14-CV-1126-KOB-TMP, 2015 WL 4032148, at *5 (N.D. Ala. June 30, 2015) ("There are no Supreme Court opinions or published opinions in this Circuit recognizing a prisoner's constitutional right to privacy in his mental health records").

In *Smith v. Neb. State Penitentiary*, No. 4:09CV3257, 2010 WL 829010 (D. Neb. Mar. 3, 2010), the district court held that, even if the right exists, the plaintiff's complaint should be dismissed. The court held that the prisoner failed to state a claim because he did not specify what confidential medical information was disclosed or allege that the disclosure was unrelated to a penological interest.

Piekkola specifies that defendants disclosed his medical information, including his history of chemical dependency treatment. Docket 12-1 at ¶ 105. He also alleges that there was no penological interest to justify defendants' access to and disclosure of the medical information, and he articulates a reasonable explanation as to why defendants may have violated his rights. *Id.* at ¶ 36.

Piekkola's claim should not be dismissed under § 1915A. The relative silence from the Eighth Circuit does not mean that Piekkola has not stated a claim that can survive screening. *See Alfred v. Corr. Corp. of Am.*, 437 F. App'x 281, 287 (5th Cir. 2011) (explaining that "[t]he fact that there is not an absolute right to this privacy protection says nothing about whether there is, in fact, such a right in this particular case," and holding that this lack of an absolute right does not show that plaintiff's legal argument is baseless). Further, legitimate penological interest is the bedrock of prison litigation. See *Turner v. Safley*, 482 U.S. 78, 89 (1987) ("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests"). Taking the facts alleged in Piekkola's complaint as true, the information was accessed and disclosed for inappropriate reasons. At this stage, these allegations belie any argument that the access and disclosure of Piekkola's records were related to a legitimate peneological interest. Piekkola states a claim on which relief may be granted, and his privacy claim survives screening.

### D.    Right to Associate

Piekkola claims that defendants Klimek, Dejong, Travis Tjeerdsma, Doyle, and Stock violated his constitutional rights by denying him contact with Karri. He claims he is not allowed to call her or contact her in any way. Docket 12-1 at ¶ 123. The Eighth Circuit analyzed prisoner phone use in *Benzel v. Grammer*, 869 F.2d 1105 (8th Cir. 1989). *Benzel* analyzed a prison regulation that required prisoners to submit a list of people the prisoner wanted to call

17

and restricted calls to the people listed. *Id.* at 1107. The court held, "A prisoner has no right to unlimited telephone use." *Id.* at 1108. "Although in some instances prison inmates may have a right to use the telephone for communication with relatives and friends, prison officials may restrict that right in a reasonable manner, 'subject to rational limitations in the face of legitimate security interest of the penal institution.' " *Id.* (quoting *Hutchings v. Corum*, 501 F. Supp. 1276, 1296 (W.D. Mo. 1980)). The court applied *Turner* to determine the reasonableness of the regulation.

In *Holloway v. Magness*, 666 F.3d 1076 (8th Cir. 2012), the court explained, "[T]he extent of inmates' First Amendment right to communicate with the outside world is a fact-intensive universe." *Id.* at 1079. Here, Piekkola claims that he is being denied contact with Karri without a legitimate reason and provides possible illegitimate reasons to explain the denial. A more fact-intensive discussion is necessary. Piekkola has provided enough to state a claim on which relief may be granted. Therefore, Piekkola's right to associate claim survives screening.

### E.      Deprivation of Property Without Due Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Piekkola claims he was deprived a property interest: the $50 fine. He alleges the fine was imposed after a DHO hearing in which he claims he did not receive due process, and as a result, he

18

was found guilty of unauthorized contact with a former DOC employee. Docket 12-1 at ¶ 145. The issue is whether Piekkola's due process rights are implicated by this fine.

Inmates have a property interest in money received from outside sources. *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996). Thus, inmates are entitled to due process before they can be deprived of money. *Id.* Therefore, before he can be deprived of his property, Piekkola must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, consistent with correctional goals and safety, to call witnesses and present a defense; and (3) a written statement of the evidence relied upon by the fact finder and the reasons for the disciplinary action." *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)). "The written notice must be adequate to enable the accused prisoner to 'marshal the facts and prepare a defense.' " *Id.* (quoting *Wolff*, 418 U.S. at 564).

In *Hill*, the Supreme Court observed that although inmates have a strong interest in avoiding arbitrary deprivations, that interest "must be accommodated in the distinctive setting of a prison, where disciplinary proceedings take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." 472 U.S. at 454. The Court held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* at

19

455. If there is "any evidence" that supports the prison official's finding, then the punishment satisfies due process. *Id.* at 455–56. The Eighth Circuit has upheld punishments under the "some evidence" standard when prisoners were held responsible under prison rules to keep a communal area free of contraband after weapons were found in the communal area. *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011).

Piekkola claims the DHO and UDC hearings violated his due process rights. He claims that "[n]o evidence was presented that Piekkola had made any unauthorized contact with a former employee." Docket 12-1 at ¶ 147. Piekkola admits that he spoke with Karri "numerous times each day" while incarcerated. *Id.* at ¶¶ 34, 36. Piekkola's only complaint about his due process rights being violated is that no evidence was presented to show he had unauthorized contact with a former employee. In light of Piekkola's admission, his due process claim fails.

### F.    Retaliation

Piekkola alleges that all defendants have retaliated against him. Docket 12-1 at ¶ 161. He states:

> All actions alleged in this Amended Complaint have in part been motivated by retaliatory purposes to punish Piekkola for exercising his First Amendment right to Associate and Fifth and Fourteenth Amendment rights to Liberty. Piekkola has been subjected to illegal incarceration, illegal search and seizure, illegal release of private information, violation of right to associate, and defamation as retaliation for his relationship with Karri Reynolds.

*Id.* at 163. The court construes this to be a claim of retaliation for exercising his right to associate with Karri under the First Amendment. While Piekkola

20

claims that he was retaliated against for his relationship with Karri, his right is narrower than that: he has no constitutionally recognized right to be in a relationship with Karri. He also has no constitutionally recognized rights under the Fifth or Fourteenth Amendment that relate to her.

To state a claim of retaliation for exercising a First Amendment right, Piekkola must show (1) he engaged in a protected activity; (2) defendants took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). According to the amended complaint, Piekkola was charged with rule infractions, placed in administrative detention multiple times, harassed while in detention, and had his phone account deactivated because he tried to communicate with Karri. Docket 12-1 at ¶¶ 47-49, 53-61, 64-66. Piekkola sufficiently alleges that his communication with Karri was protected, the communication was unconstitutionally restricted, and the restriction occurred because Piekkola tried to exercise his constitutional rights. Therefore, Piekkola's retaliation claim survives screening under § 1915A.

## G.   Defamation

Piekkola claims Travis Tjeerdsma, Kelly Tjeerdsma, Dustin Tjeerdsma, and Reynolds defamed him and damaged his reputation. He brings this claim under state law. This court has jurisdiction over Piekkola's state-law defamation claim pursuant to 28 U.S.C. § 1367(a). "The district courts shall have supplemental jurisdiction over all other claims that are so related to

21

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* In this case, the federal and state claims "derive from a common nucleus of operative fact," so exercising supplemental jurisdiction is appropriate. *McRaven v. Sanders*, 577 F.3d 974, 984 (8th Cir. 2009) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Under South Dakota law, defamation consists of either libel or slander. *Guilford v. Nw. Pub. Serv.*, 581 N.W.2d 178, 180 (S.D. 1998) (citing SDCL 20-11–2). "Slander is a false and unprivileged publication, other than libel, which . . . [b]y natural consequence, causes actual damage." SDCL 20-11-4. Piekkola alleges that defendants "regularly made false verbal and written statements," including that he "was a thief, an alcohol/drug addict, a physically assaultive person among other things." Docket 12-1 at ¶ 200. Piekkola states a claim upon which relief may be granted. This claim survives screening under § 1915A.

## III.   Motion For Reconsideration

Piekkola also moves this court to reconsider its earlier motion dismissing his original complaint in part. Docket 11. Because Piekkola amended his complaint after filing his motion for reconsideration, this motion is denied as moot.

## IV.   Summonses

As explained above, Piekkola's original complaint passed screening, and on November 10, 2015, Piekkola was sent summonses to fill out and return to

22

the Clerk of Courts so the U.S. Marshall could serve defendants. Piekkola must fill out these summonses before defendants can be served. The Federal Rules provide:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Piekkola needs to complete the summonses and return them to the Clerk of Courts within thirty days. Failure to return the summonses within thirty days may result in dismissal of this action without prejudice.

Defendants must be served and given a chance to respond before the court can rule on Piekkola's motion for a preliminary injunction.

## CONCLUSION

Piekkola's amended complaint raises seven claims. Piekkola failed to state a claim for illegal incarceration, unreasonable search and seizure, or a violation of due process. These claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

Piekkola also fails to state a claim against defendants Jackley, Gortmaker, Smith, Kaemingk, and Dooley because they are only named as supervisors or policy makers. Therefore they are dismissed.

In the amended complaint, Badure, Smith, and Slate are only named as defendants to the illegal incarceration and retaliation claims. Because the underlying illegal incarceration claim is dismissed, the retaliation claim is also

23

dismissed as it relates to the allegedly illegal incarceration. Therefore Badure, Smith, and Slate are dismissed.

In the amended complaint, Summers is only named as a defendant to the illegal search and seizure and retaliation claims. Because the underlying search and seizure claim is dismissed, the retaliation claim is dismissed as it relates to the alleged search and seizure. Therefore, Summers is dismissed.

Piekkola's privacy, right to associate, and defamation claims survive § 1915A screening. His retaliation claim also survives as it relates to exercising his right to associate with Karri.

Accordingly, it is ORDERED

1. Plaintiff's motion for reconsideration (Docket 11) is denied as moot.

2. Plaintiff's Claims 1, 2, and 5 are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

3. Plaintiff's Claims 3, 4, 6, and 7 survive screening.

4. Defendants Jackley, Gortmaker, Smith, Kaemingk, Dooley Badure, Smith, Slate, and Summers are DISMISSED without prejudice.

5. The United States Marshal shall serve a copy of the complaint (Docket 1), Summons, and this Order upon defendants Josh Klimek, Tammy Dejong, Travis Tjeerdsma, Kelly Tjeerdsma, Dustin Tjeerdsma, Lee Kauefenberg, Lyle Stock, Tammy Doyle, and Steve Reynolds as directed by plaintiff. All costs of service shall be advanced by the United States.

24

6.  Defendants will serve and file an answer or responsive pleading to the remaining claims in the complaint on or before 21 days following the date of service.

7.  Piekkola will serve upon defendants, or, if appearance has been entered by counsel, upon their counsel, a copy of every further pleading or other document submitted for consideration by the court. He will include with the original paper to be filed with the clerk of court a certificate stating the date and that a true and correct copy of any document was mailed to defendants or their counsel.

Dated March 8, 2016.

BY THE COURT:


/s/Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

25